**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

WILLIAM R. DIXON,                 :          Case No. 3:11-cv-150

      Petitioner,                          District Judge Thomas M. Rose
                                 :          Magistrate Judge Michael J. Newman

        vs.

WARDEN, SOUTHERN OHIO            :
CORRECTIONAL FACILITY,

      Respondent.                         :

---

## REPORT AND RECOMMENDATION[1]

---

      Pursuant to 28 U.S.C. § 2254, Petitioner William R. Dixon ("Petitioner" or "Dixon")

brings this petition for a writ of *habeas corpus*.  He pleads four grounds for relief:

      GROUND ONE:  The trial court erred when it refused to substitute counsel, who
      failed to prepare for trial, which violates the Defendant's Fifth, Sixth, Eight,
      Thirteenth and Fourteenth Amendments.

      GROUND TWO:  The trial court erred when Dixon was deprived of his Sixth and
      Fourteenth Amendment rights due to ineffective counsel.

      GROUND THREE:  The trial court erred when it failed to grant a new trial based
      on new evidence in violation of Defendant's due process rights.

      GROUND FOUR:  The trial court erred when Defendant's due process rights
      were violated due to prosecutorial misconduct, specifically withholding evidence.

*Id.* at PageID 21, 24, 27, 31 (capitalization altered).[2]

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] These are the four grounds for relief argued in Petitioner's memorandum in support of his *habeas* petition.  The four grounds for relief in his *habeas* petition form are slightly different, but the substance of the grounds for relief are the same.  *See* doc. 1 at PageID 5-11.  The Court, to that end, has liberally construed both documents in *pro se* Petitioner's favor.  *See Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005).

# I. BACKGROUND

In August 2006, a state court jury in Montgomery County, Ohio found Petitioner guilty of complicity to commit aggravated robbery, complicity to commit aggravated burglary, and complicity to commit felonious assault, with each count carrying a firearm specification.  Doc. 7-10.  Petitioner was sentenced to a total of 21 years imprisonment by a Montgomery County Common Pleas Court Judge, and is currently serving that sentence in the Southern Ohio Correctional Facility.  Doc. 7-12.

The Second District Ohio Court of Appeals summarized the facts underlying Petitioner's convictions as follows.[3]

> In June 2005, Shoshana Harbor was living with her husband and son in a home on Lynnaway Drive in Dayton. While fixing dinner early one afternoon, Shoshana heard her front doorbell ring. At the door Shoshana found a young woman in her twenties, wearing a long black skirt and a white blouse. The woman, who was later identified as Devon Schultz, told Shoshana that her car was out of gas and asked to use the phone. Shoshana agreed, but she shut the door leaving Schultz on the front porch before heading to the kitchen to get the phone. As Shoshana returned to the front door, she was surprised to see Schultz standing in the front hallway. Schultz asked for the phone, which Shoshana gave her, and then Schultz put a gun to Shoshana's head.
>
> Seeing that Schultz was distracted, Shoshana tried to take the gun away from her. They fought briefly, during which time Schultz shot Shoshana in the left leg and in the left side of her chest. Nevertheless, Shoshana was able to push Schultz out the front door, and Schultz ran away. Shoshana also ran outside, screaming for help. Seeing two young men outside her house, she yelled to them for help. The two men, later identified as Dixon and Peter Roach, ran after Schultz.
>
> After the getaway driver, Angela Walton, heard a commotion over the walkie talkie, she returned and picked up Schultz, but Dixon and Roach waved her on. Walton dropped Schultz off at a nearby drug store and returned to pick up Dixon and Roach.
>
> Several neighbors and Shoshana's son, Solomon, saw various parts of the events. As the first police were arriving on the scene, they videotaped the getaway car on a camera in the cruiser. Witnesses were able to give police descriptions of the conspirators as well as the car.

---

[3] Those factual findings are presumed to be correct because Petitioner has not rebutted that presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Girts v. Yanai*, 501 F.3d 743, 749 (6th Cir. 2007).

After the failed robbery, Dixon, Schultz, and Walton fled to Arkansas. The women were arrested in Maryland in October 2005. Soon after, Roach was apprehended in Springfield, Ohio. Dixon was arrested in Arkansas in March 2006. During the course of their investigation, police learned that Dixon had planned to rob the Harbors with the help of Devon Schultz, Angela Walton, and Peter Roach. Although Dixon did not know the Harbors, he believed that they kept several hundred thousand dollars in their home.

Dixon not only suggested the robbery, he was instrumental in planning it. He went to a thrift store, where he purchased the clothing and jewelry that Schultz wore. Dixon bought ammunition and loaded a gun that he then provided to Schultz. After Schultz dressed in the clothes that Dixon had purchased, he taped the gun to her leg. Dixon provided Walton with a walkie talkie in order to keep in contact with her. Dixon drew a map for the participants, showing them the neighborhood around the Harbor home, and led them to the home the afternoon of the crimes.

*State v. Dixon*, No. 21823, 2008 WL 498928, at *1-2 (Ohio Ct. App. Feb. 22, 2008) (doc. 7-17 at PageID 381-82).

## A. Direct Appeal

With the assistance of counsel, Petitioner timely appealed his conviction and sentence to the Ohio Second District Court of Appeals. *See* doc. 7-13. He raised the following assignments of error:

1. The trial court erred, abused its discretion and violated Defendant's constitutional rights when it sentenced Mr. Dixon to consecutive maximum sentences;

2. The trial court erred, abused its discretion, violated Defendant's constitutional rights, and denied him his constitutional right to counsel;

3. Defendant was denied his constitutional right to effective assistance of counsel and his fundamental right to testify on his own behalf, which right was unlawfully waived by counsel;

4. The trial court erred in failing to declare a mistrial and Defendant was denied his constitutional due process right to a fair trial when the jury was exposed to evidence of prior bad acts several times during the trial in violation of Evidence Rule 404; and

5. The verdict was contrary to the manifest weight of the evidence.

Doc. 7-14 at PageID 247.  On February 22, 2008, the Ohio Court of Appeals overruled Petitioner's assignments of error, affirming the trial court's judgment.  Doc. 7-17.

Petitioner, proceeding *pro se*, then timely appealed to the Supreme Court of Ohio, doc. 7-18, raising five propositions of law:

1.  The imposition of a sentence which is not authorized by law and exceeds the statutory maximum sentence violates due process of law and results in a void  sentence;

2.  The erroneous deprivation of retained counsel of choice constitutes a structural defect under the Sixth Amendment and requires reversal;

3.  Where counsel fails to adequately prepare for trial, fails to interview witnesses, and deprives the defendant of his absolute right to testify on his own behalf, such representation falls below the scope of reasonably professional representation, and the Sixth and Fourteenth Amendments are violated;

4.  The repeated introduction of "other acts" evidence, over objection, deprives a defendant of procedural due process, and, where the trial is rendered unfair thereby, the Fifth Amendment violation requires reversal; and

5.  Where a jury verdict is against the manifest weight of the evidence, a resulting conviction violates due process of law.

Doc. 7-19 at PageID 395.  On June 18, 2008, the Ohio Supreme Court denied Petitioner leave to appeal, and dismissed his appeal as not involving any substantial constitutional question.  Doc. 7-20.

### B.  Application to Re-Open His Appeal

While his direct appeal to the Ohio Supreme Court was pending, Petitioner filed a *pro se* application to re-open his appeal pursuant to Ohio App. R. 26(B), claiming his appellate counsel was ineffective for failing to raise the following issues on appeal:  (1)  he "was deprived of due process of law by repeated instances of prosecutorial misconduct during closing arguments to the jury"; and (2) he "was deprived of procedural due process by the arbitrary improper exclusion of

4

evidence by the trial court." Doc. 7-21.  On April 29, 2008, the Ohio Court of Appeals overruled his Ohio App. R. 26(B) application.  Doc. 7-23.

Petitioner filed a *pro se* appeal of the denial of his Ohio App. R. 26(B) application, raising three propositions of law:

1.  Where appellate counsel overlooks significant and obvious issues of constitutional magnitude and the results of the appeal are prejudiced thereby, the appellant is deprived of effective counsel as guaranteed by the Sixth and Fourteenth Amendments;

2.  Where a prosecutor repeatedly makes improper comments throughout his closing argument and the fairness of the trial is [a]ffected thereby, the defendant is deprived of due process of law; and

3.  The improper exclusion of governmental documentary alibi evidence by a trial court violates the defendant's right to procedural due process of law.

Doc. 7-25 at PageID 458.  The Supreme Court of Ohio dismissed Petitioner's appeal as not involving any substantial constitutional question.  Doc. 7-26.

### C.  Petition for Post-Conviction Relief

While these proceedings were pending, Petitioner also filed initial and supplemental petitions for post-conviction relief in the Montgomery County Common Pleas Court pursuant to Ohio Revised Code § 2953.21. Doc. 7-27.  In those petitions, he claimed that his trial counsel was ineffective because counsel was not prepared for trial -- specifically, his counsel failed to call 12 individuals and Petitioner as witnesses.  *See id.* at PageID 481-98.  Petitioner attached affidavits and statements from those 12 individuals, and from himself as well.  *See id.* at PageID 502-68.  Additionally, Petitioner claimed that the prosecutor engaged in misconduct -- by presenting perjured testimony of two individuals involved in the failed burglary, and by withholding recorded conversations between Petitioner and his parole officer (from an earlier conviction).  *See id.* at PageID 498-501.  The trial court denied his petition on the merits.  Doc.

7-29.

Petitioner then timely filed a *pro se* appeal of the denial of his petition for post-conviction relief to the Ohio Second District Court of Appeals, raising five assignments of error:

1. The absence of the allegation of the necessary *mens rea* element for aggravated robbery in the indictment constitutes a structural defect and renders the resulting conviction and sentence therefore *void ab initio*;

2. The refusal of the trial court to permit substitution of counsel upon notification by the Defendant that counsel had not prepared for trial deprived Appellant of his Sixth and Fourteenth Amendment right to effective counsel and of his Fifth and Fourteenth Amendment right to due process of law and constituted grounds to grant a new trial upon motion therefor[e];

3. The refusal of the trial court to grant the motion for new trial based upon the new evidence set forth in the motion therefor[e] was clearly erroneous and deprived Appellant of due process of law;

4. Appellant was deprived of effective assistance of counsel throughout the proceedings, in violation of the Sixth and Fourteenth Amendments; and

5. Appellant was denied due process of law by the knowing presentation of false testimony and the withholding of exculpatory evidence by the prosecution.

Doc. 7-31 at PageID 580.  The Court of Appeals affirmed the trial court's judgment.  Doc. 7-33. It determined that his first, second and fourth claims were barred by the doctrine of *res judicata*; his third claim was not properly appealed; and his fifth claim failed on the merits.  *See id.*

Petitioner filed a *pro se* appeal of the Court of Appeals' decision to the Supreme Court of Ohio, raising the same arguments, *see* doc. 7-35; his appeal was dismissed as not involving any substantial constitutional question.  Doc. 7-36.  Petitioner then unsuccessfully moved for reconsideration.[4]  *See* docs. 7-37, 7-38.

---

[4] While his post-conviction proceedings were pending, Petitioner filed three self-titled *pro se* motions in the Ohio Court of Appeals, in which he sought to introduce letters from two co-defendants.  *See* docs. 7-54, 7-55, 7-56.  The Court of Appeals overruled all three motions, holding that it could not consider and add new evidence to the record on appeal.  *See* doc. 7-60.  Petitioner appealed this decision to the Ohio

### D. Motion for a New Trial

Petitioner filed a motion for a new trial, followed by multiple supplemental motions, in the Montgomery County Common Pleas Court, *see* docs. 7-39, 7-40, 7-43, 7-44, all of which were summarily denied. Doc. 7-45. Over seven months later, Petitioner filed a motion for a delayed appeal of the denial of his motion for a new trial in the Ohio Second District Court of Appeals. Doc. 7-46. The court, finding that Petitioner had not demonstrated the necessary good cause to proceed on a delayed appeal, overruled his motion. Doc. 7-47. Petitioner then filed a motion for reconsideration, which was also denied by the Ohio Court of Appeals. *See* docs. 7-48, 7-49.

Petitioner appealed the denial of his motion for a delayed appeal to the Ohio Supreme Court. Doc. 7-50. He raised the same five arguments as he did on appeal of the denial of his post-conviction petition. *See* doc. 7-51. On September 29, 2010, the Ohio Supreme Court denied Petitioner leave to appeal and dismissed his appeal as not involving any substantial constitutional question. Doc. 7-53.

## II. ANALYSIS

### A. AEDPA Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when the state court decides a federal constitutional claim on the merits, the federal *habeas* court must defer to the state court decision unless: (1) the state court's decision "was contrary to, or

---

Supreme Court, and his appeal was dismissed as not involving any substantial constitutional question. *See* docs. 7-61, 7-62, 7-63. Upon the trial court's denial of his motions, Petitioner filed a *pro se* self-titled "motion for reconsideration, application to reopen motion for post-conviction and[/]or new trial motion under Criminal Rule 26(B) new evidence." Doc. 7-64. The Montgomery County Common Pleas Court denied his motion. Doc. 7-66. In a separate Order, the court also denied four *pro se* motions filed by Petitioner on the grounds that they did not request any addressable relief nor were supported by law or statute. Doc. 7-71 at PageID 978-79. Petitioner then appealed that ruling to the Ohio Second District Court of Appeals, docs. 7-69, 7-70, which dismissed his appeal for lack of a final, appealable Order. Doc. 7-73. Petitioner unsuccessfully moved for reconsideration. Docs. 7-74, 7-75.

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).   A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).   A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08.   "A state court's determination that a claim lacks merit precludes *habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 786 (2011) (citation omitted).

In reviewing a *habeas* petitioner's claims under 28 U.S.C. § 2254(d)(1), the Court is "limited to the record that was before the state court." *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).  Further, a state court's factual findings are presumed correct unless the petitioner rebuts them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  This statutory presumption of correctness also extends to factual findings made by a state appellate court's review of the trial record.  *Girts*, *supra* note 3, 501 F.3d at 749.

Under principles of comity, the state courts should have the first opportunity to hear *habeas* claims.  *O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45 (1999).  Accordingly, a federal *habeas* petitioner must exhaust his or her state court remedies -- by fairly presenting his or her constitutional claims to the state's highest court -- before raising them in federal court.  28

U.S.C. § 2254(b); *O'Sullivan*, 526 U.S. at 844-45.  If (1) the state court rejected the petitioner's claim based on his or her failure to comply with the state procedural rules, or (2) the petitioner failed to exhaust his or her state court remedies and no avenue of relief remains open, or it would otherwise be futile to pursue the state remedies, the petitioner has waived that claim for *habeas* review under the procedural default doctrine.  *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

### B.  Ground One

In Ground One, Petitioner claims that his Sixth Amendment right (to his counsel of choice), and his Fourteenth Amendment right (to due process of law), were violated when the trial court denied his oral request, made on the first day of trial, to replace his retained counsel. *See* doc. 1 at PageID 21-24.    Petitioner fairly presented Ground One to the Ohio Court of Appeals, where it was denied on the merits for the following reasons:

> Here Dixon argues that the trial court's decision to deny his request, made on the first day of trial, to replace his retained counsel served to deny him of his constitutional right to counsel. A defendant's right to retain counsel of his own choosing is not an unlimited right. *State v. Perkins*, Montgomery App. No. 21515, 2007-Ohio-136, ¶ 18. Instead, "when considering a motion for ... new counsel, a trial court must balance 'any potential prejudice to a defendant against concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Id.* "Accordingly, a reviewing court will not reverse a trial court's decision to deny a motion for .... new counsel absent an abuse of discretion." *Id.*, at ¶ 19. When considering such a motion, a trial court should consider the length of the requested continuance; any prior continuances; inconvenience to the parties, witnesses, opposing counsel, and the court; reasons for the delay; whether the defendant contributed to the delay; and any other relevant factors. *Id.* Because there is no evidence that the trial court's denial of Dixon's request was the product of "perversity of will, passion, prejudice, partiality, or moral delinquency[,]" that decision was not an abuse of discretion. *Id.*
>
> In support of his last-minute request for a continuance in order to retain new counsel, Dixon claims that defense counsel failed to fully investigate his case and prepare for trial. However, we have already rejected this argument as detailed above in response to Dixon's Third Assignment of Error. To the extent that Dixon maintains that counsel refused to follow Dixon's preferred strategy, we note that

in counsel's professional opinion, that strategy would have backfired. We will not second-guess the trial strategy decisions of defense counsel. *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 156.

As further evidence of his displeasure with his retained counsel, Dixon points to his numerous pro se motions. It is notable that those motions were filed more than two months before trial. Had Dixon been so disappointed with counsel's representation, he should have sought new counsel at that time.

Additionally, we must consider the fact that Dixon's last-minute request would have greatly inconvenienced the trial court, along with the State, the prospective jurors, and the numerous witnesses, some of whom had been transported from prison in order to testify.

For these reasons, we find that the trial court did not abuse its discretion in denying Dixon's last-minute request for a continuance in order to retain new counsel. Dixon's Second Assignment of Error is overruled.

Doc. 7-17 at PageID 387-88.

The right to counsel of one's own choice is a separate Sixth Amendment right from the right to effective assistance of counsel. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). As Petitioner correctly argues, a denial of this Sixth Amendment right is a structural error not subject to harmless error analysis, but only when the denial is unjustifiable. *See id.* at 148. A criminal defendant's right to have counsel of his or her choice is not absolute. *See Wheat v. United States*, 486 U.S. 153, 159 (6th Cir. 1988); *see also United States v. Griffin*, 476 F. App'x 592, 597 (6th Cir. 2011) ("We are guided by the common-sense principle that the right [to choose one's own counsel] is 'not absolute,' and it 'does not give an accused the power to manipulate his choice of counsel to delay the orderly progress of his case'"). The Supreme Court, in *Gonzalez-Lopez*, explicitly upheld its previous holding in *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983), where the Court "recognized a trial court's wide latitude in balancing the right to counsel of choice...against the demands of its calendar." *Gonzalez–Lopez*, 548 U.S. at 152. The trial court's difficult responsibility of assembling witnesses, lawyers and jurors for trial "counsels against continuances except for compelling reasons." *Morris*, 461 U.S. at 11.

10

A defendant who wishes to substitute counsel must notify the trial court of his or her "serious dissatisfaction with counsel," and the trial court is then "obligated to inquire into the defendant's complaint and determine whether there is good cause for the substitution." *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008) (citations omitted). In reviewing such a claim, an appellate court should consider "the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." *Id.* "Further, consideration of such motions requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *United States v. Saldivar-Trujillo*, 380 F.3d 274, 277 (6th Cir. 2004) (citation omitted).

Applying those factors to this matter, the Court finds that the trial court reasonably denied Petitioner's last-minute request to substitute counsel. First, Petitioner's notification to the court of his dissatisfaction with counsel was untimely -- on the first day of trial.[5] *Cf. United States v. Trujillo*, 376 F.3d 593, 606-07 (6th Cir. 2004) (request made 3 days before trial deemed untimely); *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996) (request made on the day before trial found untimely). Further, as the Ohio Court of Appeals correctly pointed out, Defendant filed multiple *pro se* motions before trial without raising his dissatisfaction with counsel, and also failed to voice his concerns with counsel at the suppression hearing two months prior. *See* doc. 7-87.

Second, the trial court sufficiently inquired into Petitioner's request for new counsel, and Petitioner did not show that the attorney-client relationship had deteriorated to the point of a total

---

[5] The "timeliness" factor is measured from the date the motion for substitution of counsel is filed. *See Jennings*, 83 F.3d at 148 (finding that a motion to substitute counsel was untimely, and that the defendant's earlier *pro se* letter to the trial judge was insufficient notice of his dissatisfaction with counsel).

lack of communication.  The following discussion transpired in the trial judge's chambers on the

morning of trial:

> THE COURT: We're here, in chambers, outside the presence of the jury. This is the morning of trial.  The jury is being checked in and we're getting ready to go on this.
>
> Mr. Dixon has made some indication that he may want new counsel, so we're putting it on the record so that he can tell us what the story is.
>
> THE DEFENDANT: Well, basically, I'm not comfortable.  I feel like that I should've had a change of venue.  I don't feel I'll be properly tried in this courtroom. I requested that and he wouldn't pursue, and no disrespect to Mr. Rion.  He's an excellent attorney, but I just feel that there's more that could've been investigated to my case.
>
> I feel that prosecution may have a personal vendetta in this case and so forth.  That they've taken means and actions beyond the law, I believe.  I've gotten letters from co-defendants that said that they've been coerced by detectives and prosecution. They've been offered deals to testify against me and then when they refused, Mr. Rion was not able to interview them in a timely manner to where we received the documentation in time that, I feel, that I didn't get enough time to prepare properly for the trial.
>
> The statements that the females had made against me that led you to co-defendants, they've made three different statements, and I feel like that that should've been suppressed, or at least tried to pursue it in that form or fashion, because it's common sense that they told 32 different lies within their documentation.  They're not valuable witnesses to the State, and that's just what I feel.
>
> THE COURT:  Well, it's up to the State to call them, they're -- you have no right to suppress their evidence.
>
> THE DEFENDANT: Right, but I can at least pursue it and ask for it to be suppressed.
>
> THE COURT:  Well, that'll come with -- you can't suppress it -- you can impeach it.  You have no right to suppress it.
>
> THE DEFENDANT:  Impeach it, right.
>
> THE COURT:  Impeach it, and that can be done in the course of the trial.
>
> THE DEFENDANT:  See, I just had these worries that I wasn't able to go over them.
>
> THE COURT:  I'm sure you have a lot of worries, but I'm going to let [your counsel] Mr. Rion address this.
>
> MR. RION:  May I please the Court, I've personally taken an interest in this case.  I've been involved in it since it came into my office.  I've met with Mr. Dixon on numerous occasions.  I've reviewed every letter that he's given our office since we met him, probably, at least, a weekly basis since he's been in jail. I've been to the crime scene, I've reviewed the video of the Motion to Suppress, I've written a transcript of the Motion to Suppress, I've hired a private detective, Jay Evan (ph), who's interviewed all the witnesses that would talk to us.  That

begins with Angie Walton (ph) who would talk to us (indiscernible). He's interviewed Mr. Roach (ph) and we've attempted to establish our case to the extent that we can.

This is not an evidentiary case in terms of physical evidence. It's, what we call a historical case or the, in the case where (indiscernible, background noise) witnesses, and (indiscernible, background noise) I've probably been over the police report half a dozen times. So, Mr. Dixon and I don't agree entirely on how the case should proceed. Nonetheless, as long as I'm the one that's trying it, then I'm going to use my best experience I've gained in 36 years, and that's the way I intend to proceed.

THE COURT: (Indiscernible, simultaneous speech)

MR. RION: I can't think of anything else I could do. I've written up my cross-examination of the witnesses. I've prepared my voir dire. I've prepared thoughts on closing. I've asked him to give me any of his contributions. He's changed his strategy on us. As of last week, we agreed that no witnesses should be called and then, at the last minute, he wants me to at least try to call Roach (ph) and a lady in the lease, which I can't, and even if I could I'm not going to use her, particularly in light of the flight instruction that you've made, and also -- I'm not saying no to Mr. Dixon.

Frankly, I would do better if I had family encouragement as opposed to trying to put me in a position where it's just not true. Now, we've filed two motions to suppress in this case. At the hearings, I've gone to the expense of probably exceeding our fee of a private detective, and he's gone from Bellefontaine to Lebanon and interviewed witnesses.

And my client has a theory that there's a Mr. Biondi (ph) who is more responsible than he is; and I, frankly, I don't see how that makes it to help him and his defense if there are other people that may be involved that doesn't negate the allegation of him in my view.

So, some of the stuff I'll listen to and sort out. I've read every note that he's written. There must be 30 pages I've read, all the notes of -- that he doesn't necessarily know that the letters he'd written the co-defendant, they've given them to the government and the government's given them to me.

And so, and many of the things that Mr. Dixon wants to try, I see it backfiring, and so I'm trying to do the best for him that I can. It's not an easy position, but, William, I don't sympathize with you. I like the heck out of you, but then this is a very, very difficult case. And I don't know if anything more that could be done. I don't need more time, obviously. We're ready to go to trial, and I can't think of anything else to do besides review all the exhibits, met with the prosecutor, met with the Court, filed jury instructions, filed a Motion in Limine, as well as Motions to Suppress.

If A.J. can't get a change of venue, Billy Dixon can't. I mean, nobody has the notoriety of Billy Dixon's case in this community and quite frankly, it's a fair community.

THE COURT: If I could be frank on that one, too. I can't imagine the circumstances under in this case where I would be compelled to change the venue. No circumstances here that present themselves that would either require a change

or call for a change of venue.
>     MR. RION:  So --
>     THE COURT:  So, Mr. Dixon, I'm going to say there you are.  We're going to have to proceed today with Mr. Rion, and that's where we're going.
>     THE DEFENDANT:  Okay.

Doc. 7-88 at PageID 1071-75.

Petitioner's disagreement with his counsel concerning trial strategy did not amount to such a complete breakdown in their relationship that would have justified a substitution of counsel.  *Accord James v. Lafler*, No. 2:09-cv-10929, 2010 U.S. Dist. LEXIS 96872, at *43-44 (E.D. Mich. Aug. 3, 2010).  Likewise, Petitioner's belief that counsel was not fully prepared for trial -- a belief that was refuted by counsel's statements to the court -- did not justify a substitution of trial counsel.  *Accord United States v. Carrillo*, 161 F. App'x 790, 793 (10th Cir. 2006).  The Sixth Amendment does not guarantee a "meaningful attorney-client relationship." *Morris*, 461 U.S. at 14.  Under these circumstances -- where Petitioner's request for new counsel was untimely, the trial court adequately inquired into Petitioner's dissatisfaction with counsel, and Petitioner failed to show a complete breakdown of communication between him and counsel -- the Court finds that Petitioner's Sixth Amendment right to counsel of his choice was not violated.

Additionally, Petitioner's claim -- that the trial court's denial of his request for new counsel violated his due process rights -- is unwarranted.  Any substitution of counsel will "almost certainly necessitate a last-minute continuance." *United States v. Whitfield*, 259 F. App'x 830, 834 (6th Cir. 2008).  The denial of a request for a continuance "rises to the level of a constitutional violation only when there is 'an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.'" *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004) (citing *Morris*, 461 U.S. at 11–12).  There is no mechanical test for

14

determining whether the denial of a continuance is so arbitrary as to violate due process, but rather, the appellate court looks at the particular circumstances in each case. *Id.* (citation omitted). A court cannot arbitrarily and unreasonably interfere with a defendant's Sixth Amendment rights "in the name of calendar control." *Linton v. Perini*, 656 F.2d 207, 209 (6th Cir. 1981). On the other hand, a defendant may not use the right to counsel of choice as a means to unreasonably delay trial. *See id.* A defendant must also show that the denial of a continuance actually prejudiced his or her defense. *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003).

Here, the Court finds that the trial court's refusal to allow him to substitute counsel on the first day of trial -- therefore necessitating a continuance -- was neither unreasonable nor arbitrary. Petitioner's reasons for wanting new counsel were insufficient to justify substitution. Moreover, the witnesses, the prosecutors and Petitioner's counsel were assembled and ready to proceed to trial. *Cf. Beuke v. Houk*, 537 F.3d 618, 641-42 (6th Cir. 2008) (finding that the trial court's denial of the defendant's request for a continuance based on counsel's unpreparedness for trial was not unreasonable or arbitrary).

In sum, the Court finds that the Court of Appeals' decision -- affirming the trial court's denial of Petitioner's request to substitute counsel on the first day of trial -- was not contrary to, nor an unreasonable application of, Supreme Court precedent. Accordingly, Petitioner's first ground for relief should be dismissed.

### C. Ground Two

In Ground Two, Petitioner asserts that his trial counsel was ineffective for multiple reasons: (1) he failed to interview and/or call as witnesses: Angela Walton, Devon Schultz, Pete Roach, Pat Dixon and Rick Kapperman; (2) he did not introduce certain documents to support an alleged alibi defense (his passport, airline tickets and medical records); (3) he failed to cross-

15

examine his parole officer, Brandon Deskins, about listing the wrong individual in the Incident Report; and (4) he denied him his right to testify on his own behalf. *See* doc. 1 at PageID 24-27. To prevail on these claims, Petitioner must meet the two-part *Strickland v. Washington* test by demonstrating that counsel's performance was deficient, and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is "a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 689. Thus, to meet the deficiency prong, the defendant must demonstrate that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### 1. Failure to Interview and/or Call Witnesses

#### a. Angela Walton and Devon Schultz

Petitioner first contends that his trial attorney was ineffective for failing to interview Angela Walton and Devon Schultz (who were both convicted of crimes related to the failed burglary of the Harbor home). *See* doc. 1 at PageID 25. Respondent defends that these sub-claims are procedurally defaulted due to Petitioner's failure to raise them on direct appeal or in his post-conviction petition. *See* doc. 7 at PageID 99. Respondent's argument is well-taken. On direct appeal, Petitioner made a general argument that his trial counsel failed to interview witnesses, without identifying the witnesses or their potential testimony. *See* doc. 7-14 at PageID 270-71. In his post-conviction proceedings, Petitioner specifically identified 12 witnesses that, he argued, his counsel should have interviewed and/or called as witnesses, but neither Walton nor Schultz was named. *See* doc. 7-27. Therefore, because Petitioner failed to

exhaust these sub-claims in state court and the Ohio courts would no longer entertain them,[6] they are procedurally defaulted.  *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (finding that an ineffective assistance of counsel claim was procedurally defaulted where the petitioner's argument in state courts relied upon different grounds than in his *habeas* petition).

In any event, Petitioner's sub-claims -- that counsel was ineffective for failing to interview Walton and Schultz -- would fail on the merits.  Petitioner claims they were important defense witnesses who would testify that they changed their stories to implicate Petitioner so that they would be eligible for potential early release from prison.  *See* doc. 1 at PageID 25-26.  As a preliminary matter, Mr. Rion (Petitioner's trial counsel) hired a private investigator that interviewed Walton and attempted to interview Schultz.  *See* doc. 7-89 at PageID 1318-19, doc. 7-91 at PageID 1626, doc. 7-94 at PageID 1924-27.  Moreover, both Walton and Schultz testified on behalf of the Government during Petitioner's criminal trial.  Petitioner's trial counsel effectively cross-examined both of them regarding why Petitioner was not mentioned in their initial statements to police.  *See* doc. 7-89 at PageID 1311-19, doc. 7-91 at PageID 1609-11, 1617-19.  Petitioner's counsel further cross-examined Walton concerning whether or not she was promised judicial (early) release from prison in exchange for agreeing to testify against Petitioner.  *See* doc. 7-89 at PageID 1318-19.  Petitioner is, accordingly, unable to show how he was prejudiced.  Walton and Schultz testified at his trial, and through his attorney's effective cross-examination of them, the jury was alerted to the fact that they potentially changed their stories to the police in exchange for potential early release.

---

[6] An Ohio court will not entertain a second petition for post-conviction relief unless the petitioner demonstrates: (1) he or she he was "unavoidably prevented" from discovering the new evidence on which he relies or (2) he or she is relying on a new federal or state right that applies retroactively. Petitioner has not demonstrated that he could meet either of these exceptions to file a second post-conviction petition. Ohio Revised Code § 2953.23(A).  Additionally, Petitioner has already filed a direct appeal and an Ohio App. R. 26(B) application to re-open his direct appeal (doc. 7-21), and Ohio does not allow successive Ohio R. App. P. 26(B) applications. *State v. Twyford*, 833 N.E.2d 289, 290 (Ohio 2005).

### b.  Pete Roach, Pat Dixon and Rick Kapperman

On the other hand, Petitioner's sub-claims that his attorney, Mr. Rion, failed to call Pete Roach, Pat Dixon, and Rick Kapperman as witnesses were properly preserved for *habeas* review because he raised these sub-claims in his post-conviction proceedings.  *See* doc. 7-27 at PageID 489-92, 563-64, doc. 7-31 at PageID 591-601.  On appeal of the denial of his post-conviction petition, the Court of Appeals held that his ineffective assistance of counsel claim was barred by the doctrine of *res judicata* because Petitioner raised it on direct appeal.  Doc. 7-33 at PageID 635-36.  When a state court declines to consider the merits of a claim on the grounds that it has already done so, *e.g.,* by holding the claim is barred by *res judicata*, there is no procedural bar to *habeas* review.  *Post v. Bradshaw*, 621 F.3d 406, 416 (6th Cir. 2010).

On direct appeal, the Ohio Court of Appeals rejected Petitioner's ineffective assistance of counsel claim on the merits, stating, in relevant part:

> In his Third Assignment of Error, Dixon contends that counsel was ineffective because he failed in a variety of ways to adequately prepare for trial. However, the record belies his claims. Because trial counsel's performance was not deficient, this Assignment of Error must be overruled.
>
> In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S. Ct. 2052.  To show deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness.  Id.  Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance. Id.  The adequacy of counsel's performance must be viewed in light of all the circumstances surrounding the trial court proceedings.  Id.  Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at that time. *State v. Cook* (1992), 65 Ohio St.3d 516, 524, 605 N.E.2d 70.
>
> Even assuming that counsel's performance was ineffective, the defendant must still show that the ineffectiveness adversely impacted the judgment.  *State v. Bradley* (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373.  Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.
>
> Dixon was represented by an experienced criminal defense attorney.

18

Counsel stated that he had taken a personal interest in Dixon's case. Counsel, in furtherance of his defense of Dixon: filed two motions to suppress and a liminal motion; met with Dixon on numerous occasions; reviewed all of Dixon's correspondence (amounting to at least thirty pages); visited the crime scene; reviewed video of the motion to suppress hearing; reviewed police reports numerous times; hired a private investigator who interviewed witnesses; and prepared his voir dire, cross examinations, and outlined his closing argument in advance of trial. Counsel stated that there was nothing more he could have done.

Furthermore, counsel explained why Dixon's ideas for his defense would have at best been fruitless, and at worst could have been detrimental to the defense. For example, counsel stated that in this case a motion for a change in venue would have been a waste of time, and the trial court agreed. He also pointed out even if other individuals played a part in planning the crimes, it would not negate Dixon's own substantial role.

Dixon claims that counsel failed to interview witnesses that would have benefitted his defense, but he does not identify who these witnesses are. Similarly, Dixon insists that counsel should have subpoenaed witnesses to testify for the defense. However, the record reflects that less than a week before the trial, Dixon was in agreement with counsel's advice not to call witnesses….

Doc. 7-17 at PageID 384-86.

The Court of Appeals reasonably found that Petitioner's trial attorney effectively represented him. Further, Petitioner's sub-claim -- that his counsel failed to interview Pete Roach -- is flatly refuted by the record.[7]  In his petition for post-conviction relief, Petitioner concedes Pete Roach was interviewed by the private investigator hired by defense counsel. Doc. 7-27 at PageID 490-91. Further, Pete Roach was transported from prison to the court and was ready to testify at Petitioner's criminal trial. *See* doc. 7-27 at PageID 490, doc. 7-94 at PageID 1911-12. After the prosecution rested, Mr. Rion notified the trial judge (outside the presence of the jury) that Pete Roach was there to testify, but it was his and Petitioner's joint decision to not call him as a witness. *See* doc. 7-94 at PageID 1911-12. The trial judge then asked Petitioner,

---

[7]  Petitioner asserts that Pete Roach was an important defense witness because he wrote him a letter in which he admitted to lying to the police about Petitioner's involvement in the failed burglary of the Harbor home. *See* doc. 1 at PageID 25-26. Petitioner attaches a statement from Pete Roach (which was also submitted to the Ohio courts in his post-conviction proceedings). Contrary to Petitioner's assertion -- that he was not involved at all in the failed burglary -- Pete Roach states that Petitioner was, in fact, present outside the victim's home immediately after she was shot. *See* doc. 7-27 at PageID 533.

"Is that your wish to not call Mr. Roach, then, Mr. Dixon?" and Petitioner responded, "Yes, sir." *Id.*

Petitioner claims his counsel was further ineffective for failing to interview and call Pat Dixon (his grandmother) and Rick Kapperman (his uncle) as witnesses. *See* doc. 1 at PageID 25-26. He contends they could have testified that Angela Walton lived with them in South Carolina after the crime occurred, during which time she allegedly told them that Pete Roach planned the failed burglary of the Harbor home and Petitioner was not involved. *See id.* Neither the affidavit of Pat Dixon nor Rick Kapperman -- submitted to the state courts in Petitioner's post-conviction proceedings -- support these assertions, however. *See* doc. 7-27 at PageID 565-68. Further, had Pat Dixon and Rick Kapperman been called as witnesses, they could not have testified as to the alleged statements that Angela Walton made to them in South Carolina, as it would be inadmissible hearsay. *See* Ohio Evid. R. 801, 802.[8]

In sum, with regard to all these potential witnesses, Petitioner has failed to show that his counsel's performance was deficient, and that he was prejudiced by his counsel's representation, based on counsel's failure to interview and/or call these witnesses to testify at trial. *See Strickland*, 466 U.S. at 687. Angela Walton and Devon Schultz testified for the state, and Petitioner's counsel effectively cross-examined them. Pete Roach was present to testify, but Petitioner himself declared in open court that he did not wish to call him as a witness. Finally, with regard to Pat Dixon and Rick Kapperman, Petitioner has failed to show how they could have provided admissible testimony to help his defense.

### 2. Failure to Introduce Documents into Evidence

Petitioner's next sub-claim is that his counsel was ineffective for failing to introduce the

---

[8] Ohio Evid. R. 801(D)(2)(e) does not apply to Angela Walton's alleged statement because it was made *after* the failed burglary and thus was not made "during the course and in furtherance of the conspiracy." Ohio Evid. R. 801(D)(2)(e).

following documents into evidence:  his passport, airline tickets and medical records from a Texas hospital -- which, he alleges, supports an alibi defense that he was not in the United States at the time of the failed burglary.  *See* doc. 1 at PageID 27.  However, the trial transcript demonstrates that an airline ticket, a passport, and visa were, in fact, admitted into evidence.[9] *See* doc. 7-93 at PageID 1856-59; doc. 7-94 at PageID 1908, 1948.  Moreover, those documents do not support an alibi defense, as he claims.  Petitioner submits records of an airline ticket issued to him from Columbus, Ohio to Belize City, Belize on April 20, 2005, and another ticket issued to him from Belize City, Belize to Columbus, Ohio on June 2-3, 3005.  Doc. 1-1 at PageID 49.  There are also two visas authorizing Petitioner to visit Belize: one dated May 24, 2005 and expiring June 19, 2005; the second dated September 16, 2005 and expiring on October 15, 2005.  Doc. 1-1 at PageID 46.  The Texas hospital records are dated in October 2005.  Doc. 1-1 at PageID 52-55.  The failed burglary of the Harbor home occurred on June 24, 2005.  Therefore, Petitioner failed on both prongs of the *Strickland* test:  (1) he failed to show his counsel's performance was deficient because he did, in fact, introduce most of the documents; and (2) he failed to show he was prejudiced because these documents do not support an alibi defense.  *See Strickland*, 466 U.S. at 687.

### 3.  Cross-Examination of Brandon Deskins

Petitioner also argues "counsel never cross-examined Agent Deskins about listing the wrong William Dixon in the Incident Report."  Doc. 1 at PageID 27.  He is apparently referring

---

[9] Further, it appears his counsel attempted to admit other related documents, but the judge sustained the state's objection to admission of such evidence.  *See, e.g.*, doc. 7-89 at PageID 1331-32.  The hospital records were also proffered into evidence.  *See* doc. 7-93 at PageID 1852-53.  On direct appeal, Petitioner argued his counsel should have authenticated these documents.  The Court of Appeals noted, "Because Detective Ward testified that he had attempted without success to verify the documents, it is unlikely that defense counsel would have been successful. In any event, the documents were admitted into evidence, but they showed dates [and] months before and after the crimes occurred, not during or near the time of the crimes."  Doc. 7-17 at PageID 386.

to the Incident Report attached as Exhibit B to his *habeas* petition.  *See* doc. 1-1 at PageID 40.

He claims the Report lists the wrong "William K. Dixon" because it has the incorrect birth year

and birth place.  *See id.* at PageID 19.  There is no indication that the Report was prepared by

Brandon Deskins, however.  *See* doc. 1-1 at PageID 40.  Therefore, Petitioner has failed to show

that counsel's performance was deficient for not raising this issue on cross-examination.

### 4.  Petitioner's Right to Testify

Petitioner's final ineffective assistance of counsel sub-claim is that his attorney denied

him the right to testify on his own behalf at his criminal trial.  *See* doc. 1 at PageID 27.  The

Ohio Court of Appeals denied this sub-claim, finding that Petitioner waived his right to testify

knowingly and voluntarily because there was no evidence in the record showing otherwise.  Doc.

7-17 at PageID 386. *See also* doc. 7-14 at PageID 272 (Petitioner's Appellate Brief) (stating

"[e]vidence of this denial of the right to testify does not appear in the record").  "[A]lthough the

ultimate decision whether to testify rests with the defendant, when a tactical decision is made not

to have the defendant testify, the defendant's assent is presumed."  *Hodge v. Haeberlin*, 579 F.3d

627, 639-40 (6th Cir. 2009) (quoting *United States v. Webber*, 208 F.3d 545, 551 (6th Cir.

2000)).  Thus, "a defendant must alert the trial court that he desires to testify or that there is a

disagreement with defense counsel regarding whether he should take the stand."  *Id.*  Otherwise,

the Court assumes a defendant's waiver of the right to testify is knowing and intentional.  *Id.*

Therefore, as there is no indication in the record of Petitioner notifying the trial court of his

alleged desire to take the stand, the Ohio Court of Appeals reasonably denied this ineffective

assistance of counsel sub-claim.  Moreover, Petitioner has failed to show how he was prejudiced

by not testifying, given that he provides no detail about the substance of his proposed testimony.

*See* doc. 1 at PageID 27.  *Accord Hodge*, 579 F.3d at 640 (finding that a *habeas* petitioner failed

to establish ineffective assistance of counsel for allegedly denying him his right to testify because there was no evidence in the record that the petitioner made that desire known to the trial court and, alternatively, because the petitioner did not show how his testimony would have changed the result of his trial).

### D.  Ground Three

In his third ground for relief, Petitioner argues that the trial court erred when it denied his motion for a new trial, which was premised on "newly discovered evidence" -- an affidavit of Pete Roach; letters from Angela Walton and Devon Schultz; and recorded conversations between him and his parole officer, Brandon Deskins.  *See* doc. 1 at PageID 27-30.

Federal *habeas* corpus is only available to correct violations of federal law.  28 U.S.C. § 2254(a).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Accordingly, this Court cannot review Petitioner's claim to the extent it is premised on state law; the Court can review this claim only for constitutional error -- *i.e.,* whether or not the denial of his motion amounted to a violation of his federal due process rights.  *See id.  Accord Pudelski v. Wilson*, 576 F.3d 595, 611 (6th Cir. 2009).  To establish a constitutional due process claim, Petitioner must establish that the trial court's ruling was "'so egregious' that it violated his right to a fundamentally fair trial."  *Id.*

To the extent Ground Three is a cognizable *habeas corpus* claim, it is procedurally defaulted. Petitioner appealed the denial of his motion for a new trial six months after the 30-day deadline,[10] and the Court of Appeals found that he failed to show the requisite good cause to justify a delayed appeal.  *See* doc. 7-47.  *See Stone v. Moore*, 644 F.3d 342, 348 (6th Cir. 2011)

---

[10] The trial court denied Petitioner's motion for a new trial on July 27, 2009, doc. 7-45, and Petitioner did not file a motion for a delayed appeal until March 4, 2010, doc. 7-46.  An appeal must be filed within 30 days after the lower's court's judgment.  *See* Ohio App. R. 4(A).

(finding that a *habeas* petitioner's claim was procedurally defaulted for failure to follow Ohio App. R. 5(A) (the Ohio rule permitting delayed appeals)).  Alternatively, the Court finds that the trial court's ruling was reasonable and did not violate Petitioner's federal due process rights.  The alleged "newly discovered evidence" was "merely cumulative to former evidence" and did not demonstrate "a strong probability that it will change the result if a new trial is granted," as required to warrant the granting of a motion for a new trial.  *State v. Hawkins*, 612 N.E.2d 1227, 1235 (Ohio 1993) (citations omitted).  Therefore, Ground Three should be dismissed.

### E.  Ground Four

In Ground Four, Petitioner raises two prosecutorial misconduct sub-claims.  He first argues that Brandon Deskins falsely testified -- that his alibi defense (*e.g.*, he was in Belize at the time of the failed burglary of the Harbor home) was not true -- and the prosecutor knew the testimony was false.  *See* doc. 1 at PageID 31-32. This sub-claim is procedurally defaulted because Petitioner did not raise this argument in his state-court proceedings, and it would now be futile for him to do so.  *See Williams*, 460 F.3d at 806*; see also supra* note 6.  Further, this sub-claim is not supported by the record.  Deskins neither confirmed nor denied that Petitioner was in the United States at the time of the failed burglary.  *See* doc. 7-93 at PageID 1872-90.  Rather, he testified that he had several telephone conversations with Petitioner in May, June and July, 2005. *See id.*  He specifically recounted a May 31, 2005 telephone call during which Petitioner told him he was in South Carolina, and also a voicemail message from Petitioner in the beginning of June 2005 (in which he did not indicate from where he was calling).[11]  *Id.* at PageID 1877-78.

---

[11] To prove that a prosecutor knowingly suborned perjury to obtain a conviction, the defendant must demonstrate that the testimony referred to was actually false, it was material, and the prosecutor knew it was false.  *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989).  The statement must be "indisputably false," rather than simply misleading.  *Id.* at 823.  Even had Deskins testified that Petitioner's alibi defense was not true, such a statement would not have been "indisputably false." Petitioner himself admitted in his written statement to the police that he was present near the scene of the

Second, Petitioner argues that the state withheld recordings of his conversations with Deskins and corresponding call logs in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  *See* doc. at PageID 31-32.  Petitioner properly preserved this sub-claim in his post-conviction proceedings in state court.  *See* doc. 7-27 at PageID 500-01; doc. 7-31 at PageID 602-03.  The trial court rejected his *Brady* claim, stating, "The existence of this tape was known at trial and defense counsel chose not to present this evidence.  Therefore, the existence of this tape is not new evidence."  Doc. 7-29 at PageID 574.  The Court of Appeals did not specifically address this claim.[12]  *See* doc. 7-33.

The Court finds this sub-claim fails for several reasons.  First, Deskins did not deny having phone conversations with Petitioner, so impeachment was unnecessary.  *See* doc. 7-93 at PageID 1872-90.  Second, there is no evidence that the state withheld the recordings and phone logs.  In fact, in his *habeas* petition, Petitioner concedes that his counsel had copies of the telephone recordings.  *See* doc. 1 at PageID 20. *See also United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (finding no *Brady* violation "where a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information,' or where the evidence is available to defendant from another source").  Third, Petitioner has failed to demonstrate that the recordings and phone logs were material to the proceedings, as required to establish a *Brady* violation.  *See Brady*, 373 U.S. at 87; *Apanovitch v. Bobby*, 648 F.3d 434, 437-38 (6th Cir. 2011).   Accordingly, Ground Four should be dismissed.

### III.  RECOMMENDATION

Based on the foregoing analysis, it is **RECOMMENDED** that Petitioner's § 2254 petition for a writ of *habeas corpus* be **DISMISSED** with prejudice and this case be

---

failed burglary.  *See* doc. 7-93 at PageID 1818-24.

[12] This Court thus looks to the trial court's decision, as it was "the last state court to issue a reasoned opinion on the issue."  *Joseph v. Coyle*, 469 F.3d 441, 450 (6th Cir. 2006).

**TERMINATED** upon the Court's docket.

Reasonable jurists would not disagree with the recommended dispositions on all grounds for relief. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, if Petitioner seeks leave to appeal, the Court **RECOMMENDS** that Petitioner be **DENIED** a certificate of appealability on all claims presented here, and also be **DENIED** leave to proceed *in forma pauperis* on appeal.

January 7, 2013                                                    s/ **Michael J. Newman**
                                                                   United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).